UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| FIDELITY NATIONAL INSURANCE COMPANY, a California corporation, as successor by merger to Lawyers Title Insurance Corporation and as successor by merger to Transnation Title Insurance Company,<br><br>        Plaintiff,<br><br>  v.<br><br>SANDPOINT TITLE INSURANCE INCOPORATED, an Idaho corporation,<br><br>Defendant. | Case No. 2:13-CV-0028-EJL<br><br>MEMORANDUM DECISION AND ORDER |

## INTRODUCTION

  Plaintiff, Fidelity National Title Insurance Company ("Fidelity"), brings these actions against Sandpoint Title Insurance Incorporated ("Sandpoint"), alleging four causes of action in connection with a title Agency Agreement ("the Agency Agreement"). On February 13, 2013, Sandpoint filed a Motion to Dismiss, pursuant to the Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7). (Dkt. 6). The Motion to Dismiss is now ripe. Having fully reviewed the record, in the interest of avoiding further delay, and because the Court

**MEMORANDUM DECISION AND ORDER - 1**

conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this court without a hearing.

## FACTUAL BACKGROUND

Fidelity is a California corporation licensed to transact business in the state of Idaho. Sandpoint is a corporation formed under the laws of the state of Idaho, licensed to do business in Idaho, and doing business in the state of Idaho. On March 1, 1998, Fidelity, as Principal, executed the Agency Agreement for the purpose of authorizing Sandpoint to "issue and countersign title insurance policies, binders, commitments to insure and endorsements" in Bonner County, Idaho. (Compl. ¶ 4.2). Pursuant to the Agency Agreement, Sandpoint was required to comply with all Fidelity requirements, directives, guidelines, rules and regulations regarding search and examination of title and the clearance of objections or exceptions to title prior to binding Fidelity under any policy.

In 2002, Sandpoint issued a title insurance policy, purportedly under the Agency Agreement, to Randy Stuart and Ann Stuart, purchasers of the Priest River Property in Bonner County, Idaho. At the time the Stuarts purchased the Priest River Property in 2002, a well use easement was attached. Sandpoint did not identify or disclose the well use easement in the title insurance exceptions despite being on record to the Priest River Property. The Stuarts discovered the well use easement and made a claim against the title insurance policy in 2009. Fidelity paid six thousand five hundred dollars ($6,500), the

**MEMORANDUM DECISION AND ORDER - 2**

reasonable fair market appraisal of the loss of value of the Priest River Property, to the Stuarts to resolve their claim against the title insurance policy.

In 1982, Brent and Laura Baker acquired title to a 160-acre parcel of real property in Bonner County, Idaho ("Southwest Quarter"). When the Bakers acquired the Southwest Quarter, the property included an easement across Crosswhite Road entering from the north to provide access to the Southwest Quarter. In 1992, the Bakers conveyed a 20-acre parcel in the northwest portion of the Southwest Quarter to Frank and Donna Cook (the "Cook Parcel"). Further, the Bakers conveyed an easement and a Road Maintenance Agreement to provide Cook access to the Cook Parcel. In 1993, the Bakers conveyed another portion of the Southwest Quarter to Yvonne Scoggins ("Ogram Parcel"). Even though the conveyance of the Ogram Parcel refers to the Road Maintenance Agreement and easement granted to Cook, no easement was reserved for Scoggins' use. In 2001, Scoggins conveyed the Ogram Parcel to Stanley and Dessiree Jagiello. In 2009, Jagiello conveyed the Ogram Parcel to Craig Ogram and Suzanne Ogram.

In 2005, the Bakers conveyed the southern half of the Southwest Quarter to the Brent and Laura Baker Family Limited Partnership ("Baker LP") ("Baker LP Parcel"). A roadway from Crosswhite Road traveling south through the Ogram Parcel ending in the Baker LP Parcel existed at the time Jagiello conveyed the Ogram Parcel to Ogram. Sandpoint issued a title insurance policy, purportedly acting under the Agency Agreement,

**MEMORANDUM DECISION AND ORDER - 3**

to Baker LP. Nothing in the Ogram Parcel history grants an easement across the Ogram Parcel to provide access to the Baker LP Parcel.

Ogram denied Baker LP use of the roadway to access the Baker LP Parcel. Baker LP filed a lawsuit in January 2011 against Ogram in the Idaho District Court for Bonner County, asserting claims to establish easement on the roadway across the Ogram Parcel. The Idaho District Court for Bonner County denied Baker LP's claims asserted in the lawsuit.

Baker LP next made a claim against the Fidelity title insurance policy issued by Sandpoint, and filed a lawsuit against Fidelity in Idaho District Court for Bonner County. Fidelity paid sixty thousand dollars ($60,000) to resolve the claim brought under the title insurance policy by Baker LP, and incurred an additional eight thousand five hundred seventy dollars and thirteen cents ($8,570.13) in expenses defending against the Baker LP claims, for a total of sixty eight thousand five hundred seventy dollars and thirteen cents ($68,570.13).

## ANALYSIS

### A. 12(b)(1)- Lack of Subject Matter Jurisdiction Due to Amount in Controversy

In this motion, Sandpoint claims that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because the amount in controversy in the Complaint does not exceed $75,000. 28 U.S.C. § 1332(a). This

**MEMORANDUM DECISION AND ORDER - 4**

argument is denied because Fidelity, in the Complaint, alleges it was damaged by, and is entitled to relief in the amount of $75,070.13.

A Defendant may move to dismiss a complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) in one of two ways. *See Thornhill Publ'g Co., Inc. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). The attack may be a "facial" one where the defendant attacks the sufficiency of the allegations supporting subject matter jurisdiction. *Id.* On the other hand, the defendant may launch a "factual" attack, "attacking the existence of subject matter jurisdiction in fact." *Id.* Here, Sandpoint challenges the claims based on a facial attack. When considering a "facial" attack made pursuant to Rule 12(b)(1), a court must consider the allegations of the complaint to be true and construe them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988).

However, "[t]he relatively expansive standards of a 12(b)(1) motion are not appropriate for determining jurisdiction ... where issues of jurisdiction and substance are intertwined. A court may not resolve genuinely disputed facts where 'the question of jurisdiction is dependent on the resolution of factual issues going to the merits.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (quoting *Augustine*, 704 F.2d at 1077). In such a case, "the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Augustine*, 704 F.2d at 1077 (citing *Thornhill*, 594 F.2d at 733-35). This case does not require the Court to resolve substantive issues in determining whether jurisdiction is proper.

**MEMORANDUM DECISION AND ORDER - 5**

District courts have jurisdiction in civil actions where there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive in interest and costs. 28 U.S.C. § 1332(a). The amount in controversy is determined based on the face of the pleadings. *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (citing *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F.2d 362, 363 (9th Cir. 1986)). To justify dismissal of the Complaint, "it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Budget Rent-A-Car v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997). (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283 at 289 (1938)).

In this case, it does not appear to a legal certainty that Fidelity's claim is for less than the jurisdictional amount. Fidelity alleges that it incurred damages, exclusive of interest and costs, in the amount of $75,070.13. In the Complaint, Fidelity asserts that it had to pay $6,500 to the Stuarts as a result of Sandpoint's negligence and failure to comply with Fidelity's stated policies and rules. Further, Fidelity asserts that it was required to pay $68,570.13 to the Bakers as a direct result of Sandpoint's gross negligence and failure to comply with Fidelity's stated policies and rules.

In its Reply, Sandpoint argues that the claims for the "Priest River Property Loss" are capped at $5,000 under the Agency Agreement. However, exceptions exist to the $5,000 cap, which includes losses that fall under gross negligence of the Agent or failure to comply with stated rules, regulations, or instructions. (Dkt. 1, Ex. A at 4,5). Construing the

**MEMORANDUM DECISION AND ORDER - 6**

facts in the light most favorable to Fidelity, it is easily plausible that the Priest River Property Loss falls under either, or both, of these exceptions. Based on these allegations, it does not appear legally certain that Fidelity cannot recover more than $75,000. Thus, Sandpoint's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is denied.

**B. 12(b)(6)- Failure to State a Claim Upon Which Relief May Be Granted**

Sandpoint's second argument is that the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because it fails to state a claim upon which relief may be granted. This argument is denied because Fidelity alleges four causes of action that appear plausible on the face of the Complaint. A motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a party's claim for relief. When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards. Rule 8(a) sets forth minimum pleading rules, requiring only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss will only be granted if the complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

**MEMORANDUM DECISION AND ORDER - 7**

unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted). Although "we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 1949-50; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Therefore, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Comm. Learning Cent., Inc.*, 590 F.3d 806, 811-12 (9th Cir. 2010) (citation omitted).

Generally, the Court may not consider any material beyond the pleadings in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). If materials outside the pleadings are considered, the motion is converted to a motion for summary judgment governed by Fed. R. Civ. P. 56. *See Jacobsen v. AEG Capital Corp.*, 50 F.3d 1493, 1496 (9th Cir. 1995). There are, however, times when documents other than the pleadings can be considered without converting a motion to dismiss into a motion for summary judgment. *See Branch*, 14 F.3d at 453. "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Id.*

In this case, Fidelity asserts in the Complaint: (1) negligence causing a $6,500 loss; (2) breach of the Agency Agreement causing the $6,500 loss; (3) gross negligence causing a $68,570.13 loss; and (4) breach of the Agency Agreement causing the $68,570.13 loss. The Court finds that the four causes of action appear plausible on the face of the

**MEMORANDUM DECISION AND ORDER - 8**

Complaint, and are supported by sufficient factual matter for each claim asserted. Sandpoint fails to provide any evidence or cite any legal authority to the contrary. Thus, Sandpoint's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is denied.

**C. 12(b)(7)- Failure to Name Necessary and Indispensable Parties**

Finally, Sandpoint states that the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(7) and 19. Sandpoint argues that Brent and Laura Baker, as grantees to Fidelity's insured, Baker LP, are necessary and indispensable parties because Fidelity is subrogated to Baker LP's claims against the Bakers under warranties of title. This Court concludes that the Bakers are not necessary parties to this action.

A party may move to dismiss a case for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). The Ninth Circuit has held that a court should grant a Rule 12(b)(7) motion only if the court determines that joinder would destroy jurisdiction and a nonjoined party is necessary and indispensable. *Shermoen v. U.S.*, 982 F.2d 1312, 1317-18 (9th Cir. 1992). A motion to dismiss for failure to join an indispensable party requires the moving party to bear the burden in producing evidence in support of the motion. *Biagro Western Sales, Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1141 (E.D. Cal. 2001) (citing *Citizen Band Potawatomi Indian Tribe of Okla. v. Collier*, 17 F.3d 1292, 1293 (10th Cir. 1994). The moving party's burden can be satisfied by producing affidavits of persons having knowledge of the absent party's interests or other relevant extra-pleading evidence. *Collier*, 17 F.2d at 1293. Pursuant to Fed. R. Civ. P. 19, the district court must first

**MEMORANDUM DECISION AND ORDER - 9**

determine if an absent party is "necessary" to the action; then, if that party cannot be joined, the court must determine whether the party is "indispensable" so that "in equity and good conscience" the action should be dismissed. *Confederated Tribes of Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1498 (9th Cir. 1991) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)).

Under the "necessary" prong, Fed. R. Civ. P. 19(a) provides a two-part analysis to determine if an absent party is necessary. *Id.* "First, the court must consider if complete relief is possible among those parties already in the action. Second, the court must consider whether the absent party has a legally protected interest in the outcome of the action." *Id.*

If an absent party is found "necessary" in the first step, Rule 19(a), and cannot be joined in the action, then the court must apply the "indispensable party" test outlined in 19(b). *Id.* Rule 19(b) provides the following four-part test to determine whether a non-party is indispensable to an action: (a) prejudice to a party or the absent party; (b) whether relief can be tailored to lessen prejudice; (c) whether an adequate remedy, even if not complete, can be awarded without the absent party; and (d) whether an alternative forum exists. *Makah Indian Tribe*, 910 F.2d at 560.

First, success by Fidelity in this action would afford complete relief to them. Fidelity's causes of action are directly against Sandpoint under the Agency Agreement, and not against the sellers of property to Fidelity's insured. Sandpoint may pursue claims against the Bakers in Idaho state court should Sandpoint believe it has claims against the

**MEMORANDUM DECISION AND ORDER - 10**

sellers. This Court has the authority to grant relief on Fidelity's claims without the presence of the Bakers.

Second, the Bakers have no legally protected interest in the litigation. There is no risk that Sandpoint could incur double, multiple, or inconsistent obligations because of any interest the Bakers may have in the real property that is the subject matter of Fidelity's claims. Furthermore, Sandpoint has failed to satisfy its burden of producing evidence showing the nature of the interest possessed by the Bakers and that the protection of that interest will be impaired by the absence. Sandpoint did not produce any relevant extra-pleading evidence, but merely provided this Court with a short, conclusory paragraph as to why the Bakers are necessary and indispensable parties.

This Court need not reach the question of whether the Bakers are indispensable parties, under Rule 19(b), because the absent parties named in this Motion are not necessary to this action. Thus, Sandpoint's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(7) and 19 is denied.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss (Dkt. 6) is **DENIED**.

2. The parties shall resubmit a joint litigation plan by June 21, 2013.

**MEMORANDUM DECISION AND ORDER - 11**

SO ORDERED.

DATED: June 7, 2013

Edward J. Lodge
United States District Judge

**MEMORANDUM DECISION AND ORDER - 12**